## IN ADMIRALTY.

## JAMES M. WILLIAMS vs. SEBASTIAN D. LAWRENCE et als.

Though the admiralty courts of this country are not bound to take jurisdiction of controversies growing out of maritime contracts, between foreigners having no domicile in this country, as they are when the parties are subjects or resident here, yet they may lawfully exercise it, and will do so or not as a sound discretion, and the claims of justice may demand.

Plaintiff was employed, at Honolulu, as master of the whaleship " Phœnix " of New London, " for the remainder of the voyage," but on returning to Honolulu at the end of a cruise, he was removed from the command by order of the owners, without any apparent cause, Held: that he was entitled to a settlement and payment of his wages at Honolulu.

Decision of CHIEF JUSTICE LEE:

This is a suit brought by the plaintiff, late master of the whaleship "Phœnix," of New London, to recover from the defendants, the owners of said ship, his share or lay of the ship's catchings, during her last cruise to the Northern Seas. It appears in evidence that on the 29th of November, 1855, while the "Phœnix" was lying at this port, Captain Pendleton, who commanded the vessel from the commencement of her voyage up to that date, gave up his charge and left the ship, for the purpose of returning to the United States, appointing the plaintiff in his stead as master of the " Phœnix," " for the remainder of her voyage." The plaintiff was to receive for his services, the one fifteenth of all the ship's catchings; one dollar per barrel extra for all sperm oil taken; and one fifteenth of all freight money which the ship might earn, while under his command. He accordingly proceeded on the cruise, which has proved very successful, the ship's catchings amounting to 1500 barrels of whale oil; 90 barrels of sperm oil; and about 24,000 lbs. of bone. It appears also

that, after Captain Pendleton had been in the United States for some time, the owners sent him out again with power and instructions, as their agent, to displace Captain Williams from the command of the "Phœnix," and take charge of her himself; which he has done since her return to this port; and the plaintiff now claims that the defendants having discharged him before the termination of the voyage, without cause, he has an immediate right to be paid for his services, at the rate for which he stipulated.

Although the jurisdiction of the court is not directly questioned by the counsel for the respondents in this case, I am aware that it has often been said this court cannot assume jurisdiction of a case arising purely between foreigners, who ought to be remitted to the courts of their own country to seek for redress. But this is altogether too narrow a view of the jurisdiction of courts of admiralty, administering the general maritime law of nations, for although with respect to the contracts of seamen for wages, it is true, that when the voyage has not terminated, or the seamen have bound themselves to abide by the decisions of the tribunals of their own country, foreign courts decline any interference, and remit the parties to their own tribunals for redress; yet, when the contract has been dissolved by the regular termination of the voyage, or by the wrongful act of the other party, the cases are not unfrequent in which foreign courts have sustained the claim for mariners' wages. (Conkling's U. S. Ad. p. 36.) The following is the language of an American writer on admiralty jurisdiction and practice, in reference to the point I am now considering: "There have been attempts in England and in this country to establish an exemption " (from jurisdiction) " in favor of the seamen of foreign merchant ships. It has been sometimes placed on the ground of the comity of nations—sometimes on the fancied ground that a vessel is part of the territory of the nation to which she belongs— sometimes on the ground that there can be no jurisdiction in such cases except by the consent of the consul, or other diplomatic representative of the foreign nation to which the seamen or the vessel belongs—all of which are fallacious. There is no such comity of nations—nothing within the territory of a nation is without the jurisdiction, and no officer of a foreign government can grant or destroy the jurisdiction of our courts. Some exemptions are established by the constitution; some by treaty, and some by the established and immemorial usage of nations, and they do not apply to persons and property engaged in the ordinary pursuits of commerce. In the present state of international intercourse and commerce, all persons in time of peace, have the right to resort to the tribunals of the nation where they may happen to be, for the protection of their rights. The jurisdiction of the courts over them is complete, except when it is excluded by treaty." (Benedict's Ad. p. 159, § 282.) The sound doctrine in my opinion is that, though the admiralty courts of this country are not bound to take jurisdiction of controversies growing out of maritime contracts, between foreigners having no domicile in this country, as they are when the parties are subjects or resident here, yet they may lawfully exercise it, and ought to do so or not as a sound discretion, and the claims of justice may demand.

But, while the respondents take no direct exception to the jurisdiction of the court, they contend that the plaintiff is not entitled to a

settlement here, but must settle in the port of New London, in the United States, from whence the ship originally sailed and where she now belongs.   I am aware that it is the general custom and law that a mariner sailing on a whaling voyage is not entitled to a settlement and the payment of his share of the proceeds of the voyage, until after the return of the ship to the port from which she sailed, and I believe it is the universal custom to insert a stipulation to that effect in the shipping articles.   But this case does not come within that rule. Captain Williams took command of the " Phœnix " under a special contract entered into with Captain Pendleton, acting as agent for the owners.   After a successful cruise by Captain Williams, he returns to Honolulu and there meets Captain Pendleton, with orders from the owners to deliver over the ship to him.   The contract of Captain Williams was made in Honolulu, his voyage began at Honolulu, and the owners, without alleging the slightest reason, have seen fit to terminate his voyage in Honolulu, and in my opinion, he is entitled in law as well as equity, to a settlement in Honolulu.   There is no allegation of any want of skill, industry, or fidelity, on the part of Captain Williams.   But, after having ratified the contract between Pendleton and Williams, the owners turn the plaintiff adrift in a foreign port, thousands of miles remote from New London, and demand that he shall work his way home as best he can, and take his settlement there.   This demand, in my opinion, is not consonant with common sense or justice, and I cannot sustain it.   If any good reason was shown for removing Captain Williams, if it was shown that he is an insane, intemperate, dissipated man, or otherwise unworthy to hold command of the ship, I should feel otherwise, and I should decline to take jurisdiction.

But, it is further contended by the respondents' counsel, that they ought not to be made to settle with the plaintiff here, because they have open accounts with him in relation to the ship " Jefferson," and that a fair settlement can be had in no other place than New London. If this point was sustained by proof it would have great weight, and I should long hesitate before deciding in favor of a settlement here. But by the evidence it appears that the owners of the ship " Jefferson" are not the same as the owners of the ship " Phœnix," and consequently any demand existing against Captain Williams on account of the "Jefferson," could not be set off against his share in the proceeds of the voyage of the " Phœnix," and the point falls to the ground.   Furthermore, so far as the proof goes it shows that there is a balance due Captain Williams, on account of the voyage of the "Jefferson," to the amount of nine hundred dollars.   So that in no event, even were the owners of the two ships the same, could it be fairly urged that Williams should be driven to a settlement in New London, on the ground of open accounts.

The plaintiff claims damages for his wrongful discharge, and asks that the court will at least decree the payment of his expenses in returning to the United States.   There can be no doubt that when a seaman is wrongfully discharged in a foreign port, he is entitled to compensation for the injury, according to the circumstances of his own particular case.   This is ordinarily measured by the loss of time, and the expenses of his return to the country where he was originally shipped; and if he has obtained employment in the mean

LL

time, his earnings are to be deducted. (Flanders on Mar. Law, p. 377.) But, it would not be proper for me to decree such damages here, for Captain Williams may never return to the United States, and until the loss and expense is incurred, it cannot properly be claimed. If he does return, his claim may be good, and he can prosecute it in the courts of his native country.

My opinion is that the plaintiff is entitled to receive here, in Honolulu, the one fifteenth of all his catchings, and the premium of one dollar per barrel on the sperm oil, according to the terms of the agreement, which will be as follows, viz:

One fifteenth of the whale oil, amounting to one hundred barrels; one fifteenth of the sperm oil, amounting to six barrels; the premium of one dollar per barrel upon the sperm oil, amounting to ninety dollars; and one fifteenth of the bone, as its quantity shall be correctly ascertained by weight in Honolulu. The bone is said to be about 24,000 pounds, but as it is the intention of Captain Pendleton to tranship and weigh the same here, its quantity can be arrived at with precision.

Accordingly, let judgment be entered in favor of the plaintiff, with costs.

Mr. Campbell and Mr. Bates for the libellant.
Mr. Griswold for respondents.